UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

GLORIA L. STRODE,             )
      Plaintiff,             )
                              )
vs.                           )      1:09-cv-64-WTL-TAB
                              )
MICHAEL J. ASTRUE,            )
Commissioner of               )
Social Security,              )
      Defendant.             )

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT SEEKING JUDICIAL REVIEW**

**I.    Introduction**

Gloria Strode applied for Social Security Disability Insurance Benefits alleging disability beginning March 28, 2005, because of a variety of conditions. The Social Security Administration denied Strode benefits, and she now seeks judicial review. For the following reasons, the Magistrate Judge recommends that the ALJ's decision be reversed and this case be remanded for proceedings consistent with this entry.

**II.    Background**

Strode was born April 1, 1971. She graduated from high school, attended some college, and served in the army from 1989 through 1994, receiving an honorable discharge. [R. at 2285–88.] Strode last worked in 2005 as a medical claims processor. [R. at 2290–91.]

Strode testified that she was married and lived with her husband and two sons. She was five feet, eight inches tall and weighed 212 pounds. [R. at 2285–86.] She walked with a cane. Strode testified that her husband assisted her with grooming on many days, and he and the children cooked, cleaned, and completed the yard work. [R. at 2303–04.] Strode testified that

she attended church three times each month and saw a movie once a month. [R. at 2305, 2307.] She had no hobbies, and spent her days visiting with her mother, talking with her husband, and watching television. [R. at 2307–08.]

To determine whether Strode is disabled, the ALJ employed the five-step process set out at 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Strode has not performed substantial gainful activity since the alleged onset of her disability. [R. at 16.] At step two, the ALJ determined that Strode has several severe impairments—degenerative disc disease, fibromyalgia, obstructive sleep apnea, irritable bowel syndrome, obesity, headaches, major depression, posttraumatic stress disorder, pain associated with general medical condition and psychological factors, and borderline personality traits. [R. at 16.] At step three, the ALJ determined that Strode does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. [R. at 17.] The ALJ next determined Strode's residual functional capacity, and at step four, the ALJ determined that Strode could perform her past relevant work as an insurance clerk, cashier, and file clerk. [R. at 25.] Finally, considering Strode's age, education, work experience, and residual functional capacity, the ALJ determined that there are a significant number of jobs in the national economy that Strode could perform. [R. at 26.] The ALJ concluded that Strode is not disabled. [R. at 27.]

**III.    Discussion**

Strode challenges the ALJ's decision on several grounds, arguing that the ALJ ignored evidence and made erroneous determinations regarding credibility, prior work, and Strode's ability to perform jobs.[1]

*A.    Ignored evidence*

Although the ALJ is not required to address every piece of evidence presented, he must build a "logical bridge" between the evidence and his conclusions, and he must confront the evidence opposing his conclusion and explain why it was rejected. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Strode argues that the ALJ improperly discussed only selective evidence favoring his denial decision, and she outlines numerous pieces of evidence she believes the ALJ overlooked. [Docket No. 16 at 23–30.] The Commissioner responds that Strode's "administrative record is quite lengthy, containing voluminous medical records," and—without addressing any of the deficiencies suggested by Strode—concludes that "[t]he ALJ sufficiently articulated his reasoning such that this court can track the ALJ's reasoning and be assured that the ALJ considered the important evidence of record." [Docket No. 23 at 8.] This perfunctory conclusion is not helpful, nor is it supported by a more thorough review of the record and the ALJ's decision.

Strode first argues that the ALJ erred in ignoring evidence reflecting Strode's mental

---

[1]Strode also argues that she was denied due process and that the ALJ erred in failing to summon a medical advisor. [Docket No. 16 at 19, 22.] Strode's due process argument merely recites boilerplate legal standards without explaining how those standards apply in her case. Strode's medical advisor argument suggests that the ALJ should have called a developmental child psychologist. Because the evidence shows that Strode's psychological problems began in adulthood, Strode has not established the need for a developmental child psychologist.

health in 2000 and 2003. [Docket No. 16 at 24.] The ALJ did not mention any of these records in his decision; however, they significantly predate Strode's alleged onset date of March 28, 2005, and the ALJ considered Strode's more recent psychiatric records. Therefore, the ALJ did not err in omitting the older records.

Strode next turns to records reflecting her mental health after her alleged onset date. In some cases, Strode is correct that the ALJ's decision does not consider these records. Significantly, these records include the following:

- the March 29, 2005, report that Strode was crying hysterically over a work situation and had "felt rage and desire to hit or hurt someone/something" [R. at 886]

- portions of a June 14, 2005, psychiatry consultation in which Strode described her thoughts of burning down her workplace in revenge for difficulties obtaining disability insurance [R. at 226–28, 379, 380]

- the May 2, 2006, record noting that Strode "is lying in bed with sheet pulled over her. She is disheveled and looks tired." [R. at 693]

- the September 27, 2006, letter from Dr. Niculescu placing Strode's GAF[2] at 42 [R. at 382]

---

[2]GAF refers to global assessment of functioning and is measured on a scale of 0 to 100. According to the *Diagnostic and Statistical Manual of Mental Disorders*, the score reflects "the clinician's judgment of the individual's overall level of functioning. . . . The GAF Scale is to be rated with respect only to psychological, social, and occupational functioning." The DSM-IV-TR provides the following descriptions of the GAF Scale:

> 51–60  Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupation, or school functioning (e.g., few friends, conflicts with peers or co-workers).
>
> 41-50  Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

- the October 13, 2006, group psychotherapy note diagnosing Strode with major depressive disorder and posttraumatic stress disorder and placing her GAF at 45 [R. at 2144–45]

- the February 5, 2007, individual psychotherapy note placing Strode's GAF at 45 [R. at 2119]

- the April 2, 2007, psychiatry telephone triage note reporting Strode's complaints of panic attacks and the April 3, 2007, prescription of Lorazepam for the problem [R. at 2100–01]

- the thorough November 29, 2007, psychiatric reassessment placing Strode's GAF at 50.[3] [R. at 2022–25]

Moreover, although the ALJ referred to Dr. Niculescu's September 27, 2006, recommendation of total permanent disability, the ALJ appears to have misinterpreted the letter. The ALJ wrote that "Dr. Niculescu recommended total permanent disability due to extreme fatigue, depression, mood lability and hopelessness.  However, this was based upon the claimant's subjective complaints."  [R. at 25.]  Dr. Niculescu actually recommended consideration of total permanent disability because of "the plethora of complex problems," including major depressive disorder, posttraumatic stress disorder, fibromyalgia, migraines, chronic back pain, irritable bowel syndrome, and sleep apnea.  [R. at 382.]

Although the ALJ's decision does consider Strode's psychiatric impairments, the ALJ's

---

*Diagnostic & Statistical Manual of Mental Disorders* 32–34 (4th ed. Text Revision 2000).

[3]Strode's brief twice incorrectly provides her November 29, 2007, GAF as 45 and once provides an incorrect page number for the incorrect GAF score.  [Docket No. 16 at 12, 29–30.] Even though the scores of 45 and 50 fall within the "serious symptoms" range, record citations must be accurate, especially when arguing that a client is "totally disabled as indicated by the GAF of 45" and when the administrative record exceeds 2,000 pages.  [Docket No. 16 at 30.]

failure to thoroughly discuss evidence supportive of disability leaves the Court wondering whether the ALJ considered that evidence. Remand is therefore necessary. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (remanding because ALJ failed to address portions of record undermining his disability determination); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (remanding where ALJ failed to mention important evidence supporting claimant because "[w]ithout even a mention, we are left to wonder whether [the evidence] was even considered"); *see also Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (remanding and "not[ing] for future reference some of the unmentioned mental evidence that seemed particularly critical").

      *B.*    *Credibility*

Because the ALJ is in the best position to determine the credibility of witnesses, his credibility determination is reviewed deferentially and upheld when it is supported by substantial evidence. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Strode challenges the ALJ's negative credibility finding, arguing that the ALJ failed to consider the factors outlined in Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529 and 416.929. [Docket No. 16 at 32.] The Commissioner responds that the ALJ considered Strode's credibility at length, and his credibility determination was reasonable. [Docket No. 23 at 9.]

In Strode's case, the ALJ considered both the objective medical evidence and the factors contained in federal regulations and Social Security Ruling 96-7p, including Strode's daily activities; the location, duration, frequency, and intensity of her pain; factors that precipitate and aggravate her symptoms; her medication regime; and her treatment other than medication. [R. at

19–24.] The ALJ also noted that the Department of Veteran's Affairs found Strode thirty percent disabled, but explained that this finding was not binding on the Social Security Administration. 20 C.F.R. § 404.1504 ("A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us."). The ALJ also properly noted that he was not bound by the findings of the state agency medical and psychological consultants because those individuals did not have the benefit of reviewing the entire record. [R. at 25 (citing Social Security Ruling 96-6p).]

Nevertheless, several aspects of the ALJ's credibility determination are troublesome. First, the ALJ misinterpreted Dr. Vaidya's work releases for Strode. In May 2005, Dr. Vaidya concluded that Strode "continues to suffer with chronic generalized pain making her unable to work. . . . At this point I would recommend her to rest one more month." [R. at 303.] At that time, Dr. Vaidya commented that he would be unable to justify this work release on an ongoing basis. [*Id.*] In mid-June, Dr. Vaidya issued another statement that Strode "continues to suffer with chronic generalized pain making her unable to work full time. . . . At this point she wants to return to work starting 6/20/05 on part time base [sic], which I can agree with." [R. at 222.] The ALJ discredited the second release, finding that it was inconsistent with Dr. Vaidya's prior note that he would be unable to justify work release on an ongoing basis. But the two are not inconsistent. In May, Dr. Vaidya concluded that he could not justify an ongoing release from full-time work; in June, Dr. Vaidya discontinued release from full-time work by concluding that

Strode was capable of part-time work.

Also troubling is the ALJ's reliance on Dr. Vaidya's May 2006 note that he was unable to write a letter concluding that Strode could not work [R. at 724].  Dr. Vaidya's May 2006 note mentions that he had signed a statement that Strode could work eight hours a day with a break after he was "contacted by disability investigator MD who has described . . . about the investigator video taping [Strode] being able to do chores at home, going for shopping and driving her self."  [R. at 724.]  However, as Strode testified during the hearing, the disability investigator videotaped Strode's mother instead of Strode [R. at 2310], raising doubts about Dr. Vaidya's conclusion and the ALJ's reliance on it.

A third problem involves Dr. Niculescu's September 2006 letter recommending total permanent disability.  The ALJ discredited this letter because it was "based upon the claimant's subjective complaints," specifically "extreme fatigue, depression, mood lability and hopelessness."  [R. at 25.]  However, as discussed above, the ALJ overlooked that Dr. Niculescu actually recommended consideration of total permanent disability because of "a plethora of complex problems" aside from Strode's subjective complaints, including major depressive disorder, posttraumatic stress disorder, fibromyalgia, migraines, chronic back pain, irritable bowel syndrome, and sleep apnea.  [R. at 382.]

Therefore, even though the ALJ properly considered the factors of Social Security Ruling 96-7p, remand is appropriate so the ALJ can reconsider his credibility determination in light of the problems discussed above.

    C.    *Strode's prior work and step five determination*

Finally, Strode argues that the ALJ failed to consider all the evidence when determining her residual functional capacity and concluding that she could perform prior work or other available jobs. [Docket No. 16 at 33, 35.] As explained above, the ALJ omitted several pieces of evidence favorable to Strode from his discussion of her claim. On remand, the ALJ should, if necessary, evaluate how this evidence affects Strode's residual functional capacity and her ability to perform prior work or other available jobs.

**IV.**    **Conclusion**

For the reasons set forth above, the Magistrate Judge recommends that the Commissioner's decision be reversed and this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this entry. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections within the fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:    02/02/2010

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
mulvany@onet.net